Can we call the next case please? 14-2358, People v. Garrett White Good morning. Will counsel presenting argument please approach and introduce yourselves for the record? Good morning. We typically allow 15 minutes per side. We can be a bit flexible with that. See how things go. How do you pronounce your last name? Gerkey. Mr. Gerkey, would you like a few minutes for rebuttal? Yes, please. All right. Sounds good. And the floor is yours, sir. May I please the court? Your Honors, this is a case about a very weak identification where the trial court unfairly and unconstitutionally prevented my client from presenting evidence in furtherance of his misidentification defense. Now in this case, Your Honors, an undercover officer, LaValle, testified that he purchased narcotics from a drug dealer in an alley. He described this person as a black man he had never met before, an unknown black man, wearing a sleeveless t-shirt that exposed both of his arms and white and gray shorts. Now, the police lost sight of this person after the undercover drug buyer actually never detained this person at the scene. So this person got away. Undercover officer LaValle testified that he did not recall seeing any tattoos on this person's body. He also indicated that he would have put that information in his report had he seen any. And the court ultimately concluded that there was no tattoo information in his report. Mr. Gierke, do you have one case that supports your assertion that the trial court abused their discretion by not allowing the reenactment of the delivery? One case that supports the – yes, Your Honor. I mean, as far as – I looked at every one of your cases, and I'm not seeing the support. So if you could direct me to it, I would appreciate that. Absolutely, Your Honor. Your Honor, a few will be hard. In that case, they did not allow the demonstration. But in that case, the rules for – So if they didn't allow it, and the trial judge was affirmed, then it doesn't really support you, does it? Well, it does, Your Honor, because it set out the rules for when a demonstration is permitted. Okay. And rules for when – So – I'm sorry, Your Honor. Your Honor, I'm interrupting you. Yes. So, excuse me. But on Harp, the defendant was not entitled to the demonstration by the rape victim. And the court specifically said that the demonstration is discretionary, correct? Then it – Allowing the demonstration is discretionary with the trial court, right? Right. It's an abusive discretion standard. You're right. Abusive discretion standard. So we have the trial judge, has the defendant step up, show him his arms, correct? And the judge says that's his demonstration. Not subject to cross-examination, not sworn under oath, nothing. I just want to see the tattoos. So the defendant wants a more thorough demonstration. Would you agree with that? Well, just to – with respect, Your Honor, that's not what happened with the court. The court did not allow my client to just show both of his arms in the tattoos. The court performed a very limited demonstration where the court forced my client to extend his arm, palm down, where his tattoo was on his right forearm. It forced him to extend his arm, palm down, then looked over the top of the bench and declared that his tattoo would not be visible. And that's the extent of any tattoo evidence permitted in this case. Okay. Let's – run with me for a minute. Yes. Okay. We're allowing the reenactment of the delivery, which I've never heard of before, but we're going to allow the reenactment. Officer says, I see the tattoos now. I didn't see them then. Does that get your guy not guilty? Yes, Your Honor. I mean, if that tattoo evidence were to come in, absolutely. It goes to the weight of the officer's testimony. It doesn't go to the admissibility. He has five other people in the alley. There's other things going on. He looks at the defendant's face and ID's him three hours later. How is that a not guilty? Because they didn't know his tattoos. We have no evidence in this record regarding how visible those tattoos were. He's an African-American man. Is he a very dark African-American man? Are those tattoos the discrepancy between the skin color and the tattoo color? We know nothing. What we do know is the trial court made findings of fact. Would you agree with that? The trial court did make findings of fact. And the findings of fact were he couldn't see the tattoo when the arm was down. Correct? The finding of fact was that based on that limited demonstration, which we're arguing was improper, based on the demonstration of force to my client to extend his arm straight out with the tattoo facing the ground and the judge looking over the top of his arm and saying that he could not see a tattoo, that's the basis for the court's finding that no tattoos were visible. But it's our position, Your Honor, that in addition to the other evidence that wasn't excluded in this case, that that particular demonstration itself was improperly limited. Because the rule under Harp and under even Illinois Supreme Court case law is that for a demonstration to be admissible, it must be probative and relevant. And in addition, it must also be performed under substantially similar circumstances as the actual offense. So we should have brought more people in to mill around the defendant because that would have been the circumstances. Right. I don't know if that has to be an exact representation. I don't know if they have to go to an alley or bring in a bunch of extra people, Your Honor. But I think that it would be... I'm not sure where the line is that you're asking us to draw. The line is, Your Honor, that this is a... This case boils down, I think we all agree, to identification. And there's a serious discrepancy between the officer's testimony and what's in the report regarding the lack of tattoos on the drug dealer that they saw. The undercover officer specifically said he did not recall seeing any tattoos in his report. He said he would have put that information in his report had he seen tattoos. The surveillance officer testified that he did not see any tattoos and his report affirmatively stated that the drug dealer did not have any tattoos. So there's a serious discrepancy between my client, who has a tattoo of his name that extends from his wrist to his elbow, and that testimony. So once he was... Defense counsel was limited by the court saying, I don't see the tattoos, no, you're not going to do a reenactment, however it was. Why didn't the defense attorney make an offer of proof and include a photograph of the tattoos so then we could have a record on which to disagree with the trial judge? Well, Your Honor, I think what you're talking about goes more to whether the error was harmless than whether it was actually admissible. I think that if a person has tattoos in a case where the drug dealer said that there's no tattoos, I don't think there's any real question that that would be relevant evidence in furtherance of my client's defense. So if we're talking about harmless error, it's the state's burden to prove beyond a reasonable doubt, because this is a constitutional error, that this error here would not have changed the outcome of the trial. So it's our position, Your Honor, that because our client was presented from presenting not just a proper demonstration of his right arm tattoo, but a demonstration with the officer, according to the officer's testimony, of putting my client in the place of the drug dealer, show that his tattoos would have been visible. And in addition, the court prevented my client from showing his left arm tattoo. We think all that evidence, all that certainly would go in furtherance of my client's misidentification defense, and therefore that the state cannot prove that beyond a reasonable doubt that that evidence would not have resulted in any different outcome of the trial. Well, why do you say that? I mean, if you've got two officers who had a very good opportunity to look at this, whoever the drug dealer was, you're saying it wasn't your guy. Right. But whoever the person was, he came out of a, he emerged from a garage, right, into an alley and turned. Right. Surveillance officer watched him the whole time. He walks towards, he's basically standing face-to-face from Officer Lavelle. Okay. So let's say that we find error and we say you should have let the officer, you should have put Lavelle down on the same level with the defendant and asked him if he could see his tattoos after he reenacted it. And that was error. You're saying that the prosecution has the burden of proving beyond harmlessness, beyond a reasonable doubt. Right. Which we can also talk about, but let's just talk generally about harmless error. You still have two officers who saw this guy, then one of them picked him out of a line a few hours later, and they both, on a clear, sunny day, daylight, opportunity to see him, say he's the guy. Yeah, maybe I messed up with the tattoos, but I still say he's the guy. And you don't think this guy can prove that that would have been harmless? No, Your Honor. Well, you can't prove in light of the evidence that was excluded. Harmless error, particularly constitutional harmless error, to prove that the state would have to prove that there is no chance that this error did not contribute in any way to the burden. Now, in this case, Your Honor, I would respectfully like to explain the fact that the court only ruled that the tattoos were not visible after performing that improperly limited demonstration. So if this court agrees that that was an error, the court's very conclusion for resolving that tattoo discrepancy against my client was error, and therefore directly contributed to the outcome of this case. In addition, Your Honor, I'd also like to point out that the court, based on the idea that the court's conclusion was that no tattoos were visible, further evidence that tattoos were actually visible on my client, including on his left arm, including a demonstration with the officer who testified that my client's tattoos were visible had this demonstration occurred, according at least to the defense counsel's offers of proof, that my client's tattoos were very clearly visible, even when his arms were out of size, when you're actually standing next to him or across from him, but maybe not from above him looking down from the bench. I think that these errors, Your Honors, would very clearly demonstrate harmless error, or would demonstrate a lack of harmless error in this case. Your Honors, it's worth pointing out, too, that these rulings were unreasonable because they're contrary to fairly well-established law. The court did not allow my client to show his left arm tattoo on two bases. It changed its mind just for the reason. The first reason was on the basis of irrelevance, which I think is very clearly wrong, Your Honors. As Your Honors know, relevance for admissibility is a very broad standard. Any tendency to make any consequential fact more or less probable, as I said, because it's an identification case that comes down to tattoos, further evidence of a tattoo would certainly be relevant evidence. The court's second basis, at the motion for new trial, he said that he had a different basis for excluding that evidence, which was due to a lack of testimony. Now, first of all, that's wrong because the record clearly shows that the reason that he actually excluded it was irrelevance. But second of all, even if the reason was testimony, that was wrong. In Wormack and Tomczak, Your Honors, there's two Illinois Supreme Court cases. The Illinois Supreme Court held that demonstrations are not testimony and, therefore, do not require the defendant to take the stand. And, in fact, in both of those cases, Your Honors, the Supreme Court held that the defendant could be forced to do a demonstration, even against his will, even if it would hurt his case, particularly because no testimony was required. In fact, the court, I think it was the Fourth District, in Peabody Spears, which is cited in my brief, the Fourth District held that, in that case, the defendant could actually be forced to show his tattoos against him to, I think, it was either to the judge or to the victim so the victim could help identify them. So if a defendant can be, just as a matter of due process, if a defendant can be forced to show his tattoos in court, if it could hurt him, he should certainly have the right to show his tattoos and provide these tattoo demonstrations. Would your argument change at all if this was a jury rather than a bench? No, Your Honors. I think it would be stronger because the jury would have been deprived of further evidence because a lot of these conversations would have been held outside the jurors. No. So the trier of facts himself looking at the defendant's arms and making findings of what was visible and what wasn't visible to him is completely irrelevant because he somehow would have, his mind would have been changed if we did a reenactment. Well, Your Honor, I think that... Oh, my God, you are right. We have the wrong man. It sounds like that. I'm sorry to interrupt you. Go right ahead. I think the goal is to have, as defense counsel, if we're talking particularly about the demonstration of the by, as defense counsel repeatedly stated to the court is that her client's tattoos were visible even when his arm was right-of-side. And even when his arm was extended, she said, if you're standing across from her next to her, part of the tattoo kind of curled around his arm is what she testified to, I'm sorry, is what she informed the court of. And so I think that, so if we actually had a representative, a properly representative demonstration of the tattoo not looking down on top of the arm, which is why it was error, Your Honor. Again, he will be hard, says that the demonstration has to be performed due pursuant to substantially similar circumstances. And in this case, Your Honor, the undercover officer did not see the drug dealer frozen in that one moment of time with his arm extended facing down. And also the officer did not see that from above. The officer, there's a wider, as Judge Ellis said, there's a wider, you know, circumstances here. We saw how they approached, they had a conversation, sort of a few feet away from each other, they exchanged, you know, drugs and money, and they walked away. So to limit it to that moment of time was improper because it's not substantially similar circumstances. And also the viewpoint of the judge was improper because the judge was not standing, you know, next to my client or across from him where, as the defense counsel indicated, his tattoos would have been visible. So I think the purpose of the by, of demonstrating the by, would have been to force the undercover officer to admit that when standing across from my client, his tattoos were visible, which would have seriously undercut, further undercut, his credibility as far as identifying my client out of the photo array and also would go directly to the identification issue in this case. Now, just very briefly, Your Honors, I'd like to finally point out that these rulings were not only unreasonable, but they were also arbitrary. We have the fact that my client was forced to demonstrate his right arm in that improperly limited manner, but was also prevented from showing his left arm. We have my client exclude, my client's left arm tattoo and demonstration was excluded based on the court's ruling that both required testimony, which is not only untrue, but the court is now requiring testimony when he did that demonstration with my client's right arm. We have the court found that viewing tattoos from the witness stand would not, also though viewing tattoos from the witness stand would be improper because they were not the same circumstances, but the court viewed my client's arm from the bench and also prevented my client from doing a demonstration with the proper circumstances with the judge. So we have the judge using different rules and different reasons for excluding my client's testimony that did not apply when he forced my client to do his own demonstration. Now, as I just said, Your Honors, there's not far most beyond a reasonable doubt, so if there are no further questions. My only question is why are we talking about a constitutional standard? At what point do we go from there being a basic evidentiary ruling that's in error to it being a constitutional violation? Well, I think the reason, well, I... You can't say his defense was completely prevented from being a broad gain, you know what I mean? I actually think that I can make the point that it is. I mean, the fact that the court limited the only tattoo evidence that was admitted at all in this case was the judge's improper demonstration, and the judge limited that demonstration to a point in time where the juggler's forearm would have been the least able to see that, the forearm, excuse me. So arguably, I mean, no visible tattoo evidence got in, and because there was a visible tattoo evidence to get in, the tattoo on my left arm demonstration with the client, I think it's argued that my client's right to present a defense was arguably completely violated. But even so, I think, you know, my client has an absolute right to confrontation and to present a full and complete defense in which he was prevented from, you know, even if a little bit of tattoo evidence came in, the fact that there was other evidence and other ways of showing that evidence... But was it really the easiest way to get this evidence and put him on the stand? He could testify to whatever he wants. He could do whatever reenactment he wants, but he's also going to be subject to cross-examination. Why aren't we talking about that? Well, your Honor, my client didn't have to take the stand. No, believe me, I know that principle. I mean, I did defense for many years. Well, in addition to the fact that he didn't have to take the stand and subject himself to cross-examination, Your Honors, it's also the fact, as I just said, that a demonstration isn't testimony. So it wouldn't have been the easiest way. The court should have just allowed the demonstration. It was directly coercive of the identification issue in this case. As I said, in Wormack, Tomczak, and Spears, all of those cases held that demonstrations are not testimony. And in addition, I'd like to point out, each one of those cases is a matter of constitutional issue as a matter of due process. Each one of those cases held the defendant, again, could be forced to do a demonstration in front of the court against his will. And particularly in Spears, as I said, he could be forced to show his tattoos against his will. So the defendant could be forced to do this kind of demonstration when it hurts him. I think that it would only stand to re-examine. What's good, can I goose? As a matter of due process, I think he should be allowed to be the same. So if there are no further questions, Your Honors, respectfully requested my client's conviction be reversed or that this court reverse command for a new trial before a different judge. Thank you, Mr. Gerke. We'll give you some time for rebuttal. Ms. Billings? Good morning. Good morning. May I please be called? My name is Leslie Billings on behalf of the people of the State of Illinois. Your Honors, the evidence in this case proved beyond a reasonable doubt that defendant was guilty of delivery of a controlled substance. The case of People v. Biggers lays out five factors in determining whether or not an eyewitness identification is valid. Let's go right to the tattoo evidence, Ms. Billings. Yes. Do you think what the court allowed was sufficient? Yes, Your Honor, I do. The court determined what evidence was relevant in this case. The court determined that... Wouldn't it be relevant that he has very obvious tattoos on his left arm even if he made the delivery with his right arm? It goes to the officer's ability to observe. Would you agree? Not necessarily in this case, Your Honor, because this is a transaction that occurred very quickly. We have an officer approaching a defendant. They exchange 11 words before they engage in a hand-to-hand transaction, after which the transaction comes to a conclusion and Officer Lovell walks away. During that very short time, we have the officer focused on the defendant's face. We know that because they spoke to one another, and the officer focused on the defendant's arm engaged in the hand-to-hand transaction because he was able to describe how defendant reached over. In that very short amount of time, it would be unreasonable to expect the officer to notice everything on the defendant during that transaction. The court recognized that. But a wrist or elbow tattoo is not something insignificant, or a tattoo on his left arm is not something insignificant. It's not like I have a mole on my ear. It's something that most people would be able to observe. If you're going to identify somebody from a photograph and you're going to make a notation, no tattoos, wouldn't that be something that the defense could bring out? If the defense says you got the wrong guy, there's not a lot you can do if you got the wrong guy other than there's something obvious that the officers didn't notice about him. Why shouldn't they be able to flush that out? You know, we'd flush that out, whatever the person is. There was nothing in the record to indicate what that left arm tattoo even looked like. What we do know is that the defendant was in front of the judge during this trial. And after having been in front of the judge, the trial court determined that the left arm tattoos were not relevant and that the only tattoos that were relevant was the one that was under the defendant's right arm, which was engaged in the transaction. Would your argument change if this was in front of a jury? No, Your Honor. I don't think that it would change. The trial court would still have the discretion to determine that that tattoo evidence was not relevant. And looking at the entirety of the situation and the short time that this transaction took place and the officer's testimony, you know, that he was with the defendant for a short amount of time, they engaged in this transaction. He was under, you know, he had a job to do, which was to, you know, exchange narcotics with this individual. But the trial just had the benefit of seeing both tattoos, is that correct? And if he made the determination that it wasn't relevant in front of a jury, the jury would never see it. They'd never hear about it. But the trial judge had the opportunity to see it in that case. So wouldn't that make your argument different? That's correct. No, Judge, and the reason is because the trial court stated that the only tattoo that was relevant was the tattoo that was engaged in the transaction because the trial court stated that that was the only tattoo that the officer would have had the ability to see. Does that make any sense to you? Given the... The surveillance officer was not even participating in the drug transaction. Correct. He was standing at the side. He saw the defendant head on and then turned, if I'm understanding the record correctly. Correct. The purchasing officer, who's a trained officer, who I presume is going to make sure he's checking out the person who's walking up to him because he's going to later have to identify him, saw him head on. They stopped. They spoke briefly. I don't... It doesn't sound like they spoke very long, but it wasn't a... It wasn't like a pass-by thing. They were... You know, he was facing him head on. The guy's wearing a tank top. He's got a tattoo on his left arm. Why... And yet, Lavelle, the purchasing officer says, I didn't put anything down about tattoos and I would have if I had seen them. Correct. And the surveillance officer said, literally wrote, no tattoos. Why is the fact that he does, in fact, have a tattoo on his left arm, why is that not relevant to the credibility of their identification? Because at this point, there's nothing in the record indicating what that tattoo looks like, how big it was, if it even showed up very well on the defendant. There's nothing to indicate in the record, outside of what defense counsel is stating, that there's any type of obvious tattoo on the defendant's shoulder. There's nothing indicating that it was brightly colored, that it was a large picture. Even the one on his arm, under his left forearm, was just seven letters going from his elbow to his wrist. It wasn't some picture. It was his name, right? Is that Derek? Correct. It was his name, Derek. Wouldn't it have been practical for him to ask the officer, do you see the tattoos on his left shoulder, is he standing there in front of you? Wouldn't that be relevant, whether or not the officer could see that? It wouldn't be relevant because that would not occur under the same circumstances as this transaction. What would be different? Because now the officer, after being in court with the defendant and having heard testimony in the banter back and forth, is now obviously aware of the defendant's tattoos and where to look for them. But these are trained officers. They're trained to identify people. They're trained to watch. They maybe even photograph, but they're certainly trained to watch characteristics. And you have an officer with no tattoos, which is a really unusual thing. Isn't it? Well, they are trained to make observations. And he says no tattoos, and you've got a guy with tattoos. And he's got tattoos. He shouldn't also be able to say, tell the judge, yeah, Derek, I see the tattoos. That means there's something wrong with the ID. So why can't you come with the conclusion that it's not relevant? Because the officer had a very short time in front of this defendant knowing, the officer now knows when he's in front of this defendant that he is going to have to make some type of identification of this defendant. So it's reasonable to assume that in that very short period of time, we're talking about seconds, that he would have been focusing on the defendant's face and tattoos and marks and scars. It was a very short amount of time that he was in front of. But that means it could have been a mistake. Well, this identification that was in a photo array took place three hours later. This is not something that happened a few days later or a week later. This was hours after the transaction occurred, after he was just face-to-face with the defendant. Why didn't the state respond to the request to have a different judge on the in? It's the state's position that the judge in the situation was not biased against the defendant. Yeah, but you never responded to the argument. Why wasn't there any response by the state? Well, the state is responding at this time that we believe this trial court is not biased against the defendant and that it could go back in front of that particular judge. So, counsel, if the defense basically had one argument in this case, and that was the tattoo argument, wouldn't it have made sense to allow the police officer to stand at the same level as the defendant? The police officer could have directed the defendant to position himself exactly as he was on the day in question. You know, same distance, same everything. He could put his arm however he wanted it. And then the officer could say from his level, from his vantage point, whether he could see his tattoos or not. It was a clear sunny day, midday, I believe. I think it was in the middle of the day. So, granted, it's not an alley. They're not in an alley. They're in a courtroom. But the lining is essentially the same. They'll be the same distance from each other. They'll basically have the same visibility. Wouldn't that be a better piece of evidence, a more relevant way of determining the visibility of his tattoos rather than a judge up on the bench standing up and leaning over and saying, I can't see them? Your Honor, I think what is important to note is that the defendant, throughout his brief, has constantly said that the defendant was compelled. He was compelled to show these tattoos to the judge. He was compelled to do this demonstration in a certain way. And that is actually not the case at all. No, I agree with that. He wasn't compelled. It was their idea, right? It was the defense's idea to stand before the judge. What I'm asking you is my question. Wouldn't it be more relevant for the officer to say whether he can see the defendant's tattoos when the defendant is in exactly the same position as he was during the buy versus a judge leaning over from above saying, I can't see him from this view? Well, the defendant, in order for him to participate in that demonstration, could have positioned his arm in any way that he felt the officer would have been able to see simply by tilting his arm in any certain direction. And the question is whether or not he said that. They could have had the police officer say, no, his arm was like this. I'm not saying maybe it wouldn't have been perfect. And that could have gone into how convincing it was to the finder of fact. But generally speaking, isn't that a more relevant viewpoint than what the judge sees from above? Not if they cannot render substantially similar conditions as when this transaction took place because, once again – What's substantially dissimilar about what I just described? Because we have a situation where there's nothing in the record indicating that these two people were standing next to each other. I think the record more indicates that they would have been standing across from one another. They were looking at each other, talking to each other, and engaged in a transaction. The officer could have laid all that out. He could have put the defendant exactly where he should be, where he was on that day. The officer could recreate it completely. You can't necessarily recreate where the officer's focus was on that day, though. And that's an argument that the state could make in closing. The argument that the state could say, that doesn't really tell you as much as you might think it does, Your Honor. And here's why, because of the things you're saying right now. But why couldn't he put that evidence in? Because it wouldn't be under those same conditions. There's nothing that can replicate the condition of a police officer having to do a buy in a certain amount of time, seeing the defendant's face for the first time, trying to make mental notes of that, if that's what he's doing, and then paying attention to what his hands are doing for the transaction and for his own safety. But, Counsel, all he would have done was, he wouldn't have been testifying as to what he witnessed that day. He would just be able to testify whether he noticed it that day or not. Yes, I can see the tattoos from this view. But that's all the defense was trying to get out, whether the officers actually saw him that day. It sounds like they didn't see him that day because they both supported that under oath. And in their reports. But the question that the defense was trying to, the point that defense, I think, was trying to establish, was that you should have been able to see them, or they were at least visible to be seen. And, therefore, the fact that you didn't see him might suggest you got the wrong guy. Why am I missing something here? Because, as I said before, the officer is now aware. He's now aware of the defendant's tattoo. He's now aware of what to look for. It's much easier for him to see these under this controlled environment than it would be on the day of that transaction. That's true. For the foregoing reasons and for the reasons stated in the people's brief, we would ask you to affirm the defendant's conviction. Thank you, counsel. Mr. Gerke. Before you get going, Mr. Gerke, what is the basis of finding that the judge is so prejudiced and so biased against the defendant that he can't hear this case on remand? Because you do understand that that's hitting a judge with a nuclear bomb, right? Well, it's not my intention to hit a judge with a nuclear bomb. Thank you. But you understand there's ramifications to those types of findings, right? Sure. But I think the rules for whether a new judge is required here, Your Honor, it's not just the absence of actual bias. It's the absence of probability of bias. And I think the fact that in this case, even apart from all of the things the judge did as far as, you know, the comments it made to the defense counsel and the way that it treated defense counsel throughout the course of the trial, I think it's just the basic fact that the judge's rulings in this case, again, were not only unreasonable, but they were arbitrary. It showed that it did not treat my client fairly. And that's because the judge was mistaken about something, because the judge applied different rules to its evidentiary rulings with my client. Again, my client tried to show his right arm tattoo to the judge improperly, but it might not have compelled the entire demonstration. The judge did compel my client to substantially limit the demonstration of his right arm tattoo, but yet prevented my client from presenting a left arm tattoo and the demonstration. The judge's reason for why the drug by couldn't be shown was because the judge was mistaken, but the judge thought that, you know, LaBelle would be identifying the tattoos from the witness stand. But the judge, again, viewed the arm from the bench. So it's the same. It's not really any different. And the judge said that it would be the same circumstances, but he prevented a demonstration with the same circumstances. So I think that just the fact, just that fact alone, Your Honor, there's at least an appearance of impropriety here, which I think in People v. Heider, they remanded for a new trial before a different judge, just to avoid even the appearance of impropriety in that case. And it's also worth pointing out, as your Honor. Wait, so because he didn't allow a reenactment of the crime to take place in his courtroom, there is now an appearance of impropriety? Not just that fact alone, Your Honor. I think it's everything, you know, in totem. I think it's the fact that it's not just the fact he didn't allow the demonstration. It's the fact that the reasons for his rulings were different. And the reasons for his rulings were different than what it applied to his own demonstrations of my client's arm. I think the fact, again, the fact that the judge applied different rules for admissibility. For example, again, the judge said, oh, you can't do the demonstration without any testimony. In addition to that being incorrect under law, the judge held that. Additional demonstration. I'm sorry. You can't do the additional demonstration. Sure, you can't do the additional demonstration without testimony. But did not require any testimony when the judge, you know, permitted my client to show his right arm admissibly though in an improperly handled threat. And I also have to point out, Your Honor, that the State has completely forfeited this argument for not raising it in their brief. As I think the case I cited in my reply brief, you know, if the State doesn't object to, you know, in their brief to the suggestion of bias, then they basically lift the issue. And we're not even allowed to discern if that is correct or not. Well, forfeiture is not a limitation on the court, Your Honor. Thank you. You're certainly allowed to find overcomes. Briefly, Your Honors, I think I have to point out that nothing that you heard just now from opposing counsel actually can address the admissibility of any of this evidence. Our main argument is that this evidence should have been admitted and that the State can't prove harmless there. Everything that opposing counsel said about, you know, relevance, they didn't really challenge it. It was relevant, I don't think. They said the judge properly found the left arm tattoo was not relevant, but that's just not the case. I mean, I think, as I explained earlier, I think that any identifying features on a defendant in an identification case is certainly relevant to the outcome. I'd also like to point out that just finally that counsel kept referring to that these weren't under substantially similar circumstances, but under that standard, Your Honor, no demonstration could ever be allowed because, you know, the person's focus might be in different places. As Justice Elk pointed out, defense counsel is merely trying to elicit the fact that when standing across from him, that my client's tattoos would have been visible, which cuts against the idea that his identification was accurate at the time. So if there are no further questions, Your Honors, thank you. Thank you, counsel. Very interesting case. Well briefed. Well argued. We appreciate all your efforts. We will take it under advisement, and we are going to stand adjournment, and we've got some, I think, students that will come out and talk to you. Thank you very much, counsel. We stand adjourned.